PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| RONALD WAGNER II, | ) |
|         Plaintiff, | ) CASE NO. 5:19CV0377 |
| v. | ) JUDGE BENITA Y. PEARSON |
| THE CITY OF CANTON, OHIO, *etc.*, *et al.*, | ) **MEMORANDUM OF OPINION** |
|         Defendants. | ) **AND ORDER** |
| | ) [Resolving ECF Nos. 35, 49, and 51] |

Pending is Defendant Joseph Barnhouse's Motion for Judgment on the Pleadings (ECF No. 35).[1] Also pending is Defendants The City of Canton, Ohio,[2] Steven E. Shackle, and Keith Foster's Motion for Judgment on the Pleadings (ECF No. 49). The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law. For the reasons set forth below, the motions are granted.

---

[1] The Court granted Ohio State Highway Patrol Trooper J-vonne Humphreys' Motion for Leave to Join Barnhouse's Motion (ECF No. 46). *See* Non-document Order dated January 8, 2020.

[2] The City of Canton Division of Police is also a named defendant. A city police department, however, is not *sui juris*; the real party in interest is the city itself. *Richardson v. Grady*, Nos. 77381, 77403, 2000 WL 1847588, at *2 (Ohio App. 8th Dist. Dec. 18, 2000) (collecting cases).

(5:19CV0377)

# I. Background[3]

In this case, Plaintiff Ronald Wagner II seeks money damages and alleges that, on May 13, 2018 and after, he was the victim of "assault and battery, harassment, malicious prosecution, wrongful arrest, and other unlawful treatment" by three Canton Police Officers and one Ohio State Highway Patrol Trooper. Complaint (ECF No. 1) at PageID #: 3, ¶ 1.[4]

On May 13, 2018, Trooper Humphreys pulled over Plaintiff's car for failing to properly display a license plate, a misdemeanor traffic violation. The Canton Police Officers, who were called for back-up, requested that Plaintiff give them his identification. Plaintiff told them that his name was "Ron," but he declined to give his identification because he did not feel the traffic stop was lawful. Plaintiff resisted all efforts of the officers to obtain his identity for over 25 minutes. Plaintiff recorded a video of the traffic stop with his cellular telephone. He indicated to Defendants that he was not carrying a weapon. Officer Shackle referred to Plaintiff as a "constitutionalist" in a communication to Canton dispatch, indicating what he understood to be the reason for Plaintiff's noncompliance. At the request of Trooper Humphreys and Officers Foster and Shackle, a canine officer, from the Canton Police Department was brought to the

---

[3] The Court has been presented two versions of what occurred: the Complaint (ECF No. 1) and dash-cam footage (ECF No. 47). *See* Plaintiff's Response to Defendant Barnhouse's Motion for Judgment on the Pleadings (ECF No. 43) offering the video evidence. The Complaint is in stark contrast with the video evidence on matters of legal importance. The standard of review recited below requires the facts in a complaint be taken as true. *See* Standard *infra*. The legal analysis that follows explains when the Court may rely on the undisputed video evidence. *See also* n. 9 *infra*.

[4] According to Plaintiff's Response to Defendant Barnhouse's Motion, however, Plaintiff is not asserting claims pursuant to either state or federal law for wrongful arrest or malicious prosecution. *See* ECF No. 43 at PageID #: 232 n. 2.

(5:19CV0377)

scene of the traffic stop and placed in the control of Officer Barnhouse. Officer Barnhouse showed Plaintiff the 100-pound police canine of the Belgian Malinois breed and informed Plaintiff that, if Plaintiff continued to fail to comply, the dog would be used in the course of extracting Plaintiff from his car.

Plaintiff continued to fail to comply. Trooper Humphreys and either Officer Foster or Shackle smashed the windows of Plaintiff's vehicle. Defendants shouted for Plaintiff to show his hands. The Complaint alleges that Plaintiff complied and raised both hands above his head. ECF No. 1 at PageID #: 7, ¶ 34. Officer Barnhouse deployed the canine into Plaintiff's vehicle. Trooper Humphreys reached into the vehicle and seized Plaintiff's arms. The canine bit Plaintiff on his left arm, shaking its head repeatedly and tearing Plaintiff's flesh. Defendants pulled Plaintiff from his vehicle, with the canine still biting firmly onto Plaintiff's arm. According to Plaintiff, Defendants allowed the canine to bite Plaintiff for approximately 30 seconds after his handcuffing before Officer Barnhouse ordered the canine to release Plaintiff. ECF No. 1 at PageID #: 7, ¶ 40. Plaintiff's left arm required multiple surgical procedures.

Plaintiff was arrested for obstructing official business in violation of Ohio Rev. Code § 2921.31(A) (2018 TRD 03907) and resisting arrest in violation of Ohio Rev. Code § 2921.33(A) (No. 2018 CRB 02152). Ultimately, the criminal complaint for resisting arrest was amended pursuant to Ohio Crim. R. 7(D). *See* Copies of the Motion to Amend Complaints (ECF No. 27-3) and the Judgment Entry granting the amendment (ECF No. 27-4). The charge of resisting arrest was amended in order to provide the Canton Municipal Court with very specific

3

(5:19CV0377)

information regarding Plaintiff's actions:

> The defendant, after being told he was obstructing official business, did recklessly and or by force resist arrest by tucking away from officers, hiding his hands, and hooking his arm on the steering wheel of the vehicle so as to prevent officers from being able to remove him. Once removed from the vehicle, the Defendant continued to resist by reaching for his phone and failing to give officers his hands.

ECF No. 27-4. Plaintiff, with counsel present, pled no contest to the amended charge and was found guilty of resisting arrest and failure to display a proper license plate in relation to the arrest of May 13, 2018. *See* Copies of the Judgment Entries (ECF Nos. 27-1 and 27-2).[5]

Count 1 of the Complaint (ECF No. 1) is a § 1983 claim for excessive force against Officer Barnhouse for use of the canine during the arrest and apprehension of Plaintiff. Count 2 is a § 1983 claim against Officers Foster and Shackle and Trooper Humphreys for failure to intervene. Count 3 is a § 1983 *Monell* claim against the City of Canton. Count 4 is a § 1983 *Monell* claim against the Ohio State Highway Patrol.[6] Count 5 is a state-law battery claim against Officer Barnhouse.[7]

---

[5] The Complaint asserts that "all charges against plaintiff WAGNER were dismissed." ECF No. 1 at PageID #: 7, ¶ 44. When Defense counsel brought this discrepancy to the attention of the Court during the Case Management Conference, Plaintiff indicated he would amend the Complaint in order to properly set forth the status of the criminal charges. However, no amendment occurred prior to the Court's cutoff date to amend pleadings.

[6] On June 18, 2019, the Court granted Plaintiff's Motion (ECF No. 38) to voluntarily dismiss his claims against the Ohio State Highway Patrol without prejudice. *See* Marginal Order (ECF No. 39).

[7] Titled "42 U.S.C. § 1983 - *Monell*"

4

## II. Law and Analysis

### A. Standard of Review

The procedural standard for determining a judgment on the pleadings under Fed. R. Civ. P. 12(c) is indistinguishable from the standard of review for dismissals based on failure to state a claim under Fed. R. Civ. P. 12(b)(6). *U.S. ex rel. Bledsoe v. Community Health Systems, Inc.*, 342 F.3d 634, 643 (6th Cir. 2003); *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001) (citing *Mixon v. Ohio*, 193 F.3d 389, 399-400 (6th Cir. 1999)). In deciding a motion to dismiss pursuant to Rule 12(b)(6), or a motion for judgment on the pleadings under Rule 12(c), the Court must take all well-pleaded allegations in the complaint as true and construe those allegations in a light most favorable to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing authorities).

In other words, claims set forth in a complaint must be plausible, rather than conceivable. *Id.* at 570. "[When] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader

(5:19CV0377)

is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). The factual allegations in the complaint "must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, p. 235-236 (3d ed. 2004)). In addition to reviewing the claims set forth in the complaint, a court may also consider exhibits, public records, and items appearing in the record of the case as long as the items are referenced in the complaint and are central to the claims contained therein. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *Erie County, Ohio v. Morton Salt, Inc.*, 702 F.3d 860, 863 (6th Cir. 2012).

### B. Count 1

*Heck v. Humphrey*, 512 U.S. 477 (1994), bars § 1983 plaintiffs from advancing claims that, if successful, "would necessarily imply the invalidity" of a prior conviction or sentence. *Id.* at 487. *Heck* applies to bar a § 1983 claim if a struggle between a plaintiff and police officers gives rise to both the plaintiff's resisting arrest conviction and the plaintiff's excessive force claim, "and the two are inextricably intertwined." *Cummings v. City of Akron*, 418 F.3d 676, 682-83 (6th Cir. 2005) (holding that defendant who pled "no contest" to assaulting an officer was estopped from later asserting an excessive force claim under § 1983). Plaintiff cannot maintain his § 1983 excessive force claim in the case at bar because his conviction for resisting arrest has not been invalidated, and the successful prosecution of his claims would call that conviction into question. *See Hicks v. Barberton Police Dept.*, No. 5:11CV0076, 2012 WL 5833565, at *5 (N.D. Ohio Nov. 15, 2012) (Lioi, J.) (citing *Heck, supra*).

(5:19CV0377)

As Officer Barnhouse acknowledges, *see* ECF No. 35 at PageID #: 197, the applicability of *Heck* is limited based on the timing of the alleged excessive force. *See Matheney v. City of Cookeville , Tenn.*, No. 2:08-cv-0066, 2010 WL 1417947, at *5 (M.D. Tenn. April 7, 2010) (concluding *Heck* bars an excessive force claim when it arises from injuries inflicted by a police dog before or during an arrest and excessive force could have been raised as an affirmative defense to the resisting arrest charge), *aff'd*, 461 Fed. Appx. 427 (6th Cir. 2012); *Michaels v. City of Vermillion*, 539 F. Supp.2d 975, 992 (N.D. Ohio 2008) (O'Malley, J.) ("When the alleged excessive force is used *after* the suspect ceases resisting arrest, the *Heck* rule does not apply.") (emphasis in original) (citation omitted). Accordingly, the focus in the case at bar is on the use of force as it related to the cessation of Plaintiff's resistance to the officers.

There is clear evidence that Plaintiff continued to resist both prior to being pulled from the car and even after he was outside the car and in contact with the canine and human officers. Plaintiff's allegation that Officer Barnhouse allowed the canine officer to bite him after he was secured in handcuffs, ECF No. 1 at PageID #: 7, ¶ 40, is contradicted by the amendment to the charge of resisting arrest, *see* ECF No. 27-4, and video evidence.

Ordinarily, matters outside the pleadings may not be considered when ruling on a motion for judgment on the pleadings unless the motion is converted to one for summary judgment. *Steele v. United Parcel Service*, 499 F. Supp.2d 1035, 1037 (E.D. Tenn. 2007). A video, however, can be used when deciding a Rule 12 motion if the video "utterly discredit[s]" the plaintiff's version of events. *Bailey v. City of Ann Arbor*, 860 F. 3d 382, 386 (6th Circ. 2017) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). Generally speaking, if "no reasonable jury

(5:19CV0377)

could watch the video" and agree with the plaintiff, the video "allows us to ignore the visible fiction in his complaint." *Id.* (internal quotation marks omitted); *see also Osberry v. Slusher*, 750 Fed.Appx. 385, 390 (6th Cir. 2018) ("[W]e do not accept a plaintiff's version of an arrest as true (even at this motion to dismiss stage) if a video shows that plaintiff's 'pleadings internally contradict verifiable facts central to his claims[ ] that make[ ] his allegations implausible.' " (quoting *Bailey*, 860 F.3d at 387)). In addition, the Ohio Supreme Court has previously held that a trooper's dash-cam video is a public record, because "dash-cam recordings . . . document governmental activities, decisions, and operations during a traffic stop and pursuit" by Ohio Highway Patrol officers." *State ex rel. Cincinnati Enquirer v. Ohio Dep't of Pub. Safety*, 148 Ohio St.3d 433, 439 (2016) (citation omitted).

Plaintiff urges the Court to consider the dash-cam footage (ECF No. 47)[8] in order to establish that Officer Barnhouse, through his canine, applied excessive force in the form of dog bites to Plaintiff *after* he was secured in handcuffs.[9] Plaintiff's argument is contradicted by the video. He was not secured in handcuffs while the dog was biting him. A review of the video

---

[8] ECF No. 47 is the Ohio State Highway Patrol's complete redacted video of the encounter with Plaintiff recorded from Trooper Humphreys' vehicle. The video is authenticated by affidavit as a public record. *See* ECF No. 45 at PageID #: 256. The video is complete, except for a minor audio edit to redact law enforcement automated data system (LEADS) information. Plaintiffs also purportedly submitted an exhibit, *see* ECF No. 43 at PageID #: 231 and n. 1, which is substantially edited dash-cam footage from Trooper Humphreys' vehicle. The docket, however, does not reflect that it was ever manually filed with the Clerk of Court.

[9] This is why earlier (in the within document) the Court cites to specific allegations in the Complaint (ECF No. 1) that contradict the dash-cam footage (ECF No. 47). *See* n. 3 *supra*.

8

(5:19CV0377)

unequivocally reveals that Officer Barnhouse disengaged his canine from Plaintiff at 19:21:31-32 of the video. At that time, Plaintiff is not handcuffed, but is continuing to struggle. It is not until 19:21:40 that handcuffs are securely placed on Plaintiff. The video shows Officer Barnhouse disengaging his canine and walking away from Plaintiff a full eight (8) to nine (9) seconds *before* Plaintiff is rolled over and handcuffed by Trooper Humphreys and Officers Shackle and Foster. At no time in the video is Plaintiff bitten by the canine under Officer Barnhouse's control while Plaintiff's hands are securely handcuffed behind his back. In fact, no force is applied by any Defendant after Plaintiff is handcuffed. As in *Bailey*, the video in the case at bar specifically and directly contradicts material facts within the Complaint (ECF No. 1). Likewise, the video materially contradicts assertions made in Plaintiff's Response to Defendant Barnhouse's Motion (ECF No. 43) regarding the claim that the canine bit Plaintiff after he was securely handcuffed.[10] The video completely contradicts Plaintiff's allegation that the canine continued to bite him after he was placed in handcuffs. Plaintiff cannot avoid the *Heck* bar and it is fatal to his claims.

**C. Count 2**

Count 2 is a § 1983 claim against Officers Foster and Shackle and Trooper Humphreys for failure to intervene. This claim is derivative of Plaintiff's claim against Officer Barnhouse.

---

[10] For example, "Based on the pleadings and the evidence before the court, an inference could fairly be drawn that Plaintiff was removed from his vehicle while the dog continued to bite, promptly reached for his phone and failed to immediately give officers his hands, and then ceased resistance and complied, was handcuffed, and continued nonetheless to be bitten." ECF No. 43 at PageID #: 237-38.

(5:19CV0377)

No duty to intervene arises if there was no unconstitutional use of force. *Holland v. Cnty. of Macomb*, No. 16-2103, 2017 WL 3391653, at *3 (6th Cir. March 17, 2017) (citing *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004)); *see also Bonner-Turner v. City of Ecorse*, 627 Fed.Appx. 400, 413 (6th Cir. 2015) (an officer cannot be liable for failing to intervene if there is no constitutional violation). Judgment will be entered in favor of Officers Foster and Shackle and Trooper Humphreys because a plaintiff looking to proceed on a § 1983 claim must allege active unconstitutional behavior on the part of a defendant.

### D. Count 3

Because no constitutional violation has been shown, Plaintiffs' *Monell* claim against the City of Canton cannot survive as a matter of law. There can be no liability under *Monell* without an underlying constitutional violation. *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014); *see also Farinacci v. City of Garfield Hts.*, No. 1:08CV1355, 2010 WL 1268068, at *5 (N.D. Ohio March 30, 2010) (O'Malley, J.) ("[When] no constitutional violation occurred, there can be no *Monell* claim against the City, regardless of its policies."), *aff'd*, 461 Fed.Appx. 447 (6th Cir. 2012); *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) ("There can be no liability under *Monell* without an underlying constitutional violation.").

### E. Count 5

Like his federal claim of excessive force brought under § 1983, Plaintiff's state-law claim of battery against Officer Barnhouse fails as a matter of law. Plaintiff is estopped from relitigating issues that would invalidate his prior criminal conviction. "Similar to *Heck*, Ohio

10

(5:19CV0377)

courts also bar subsequent civil claims brought by a prior criminal defendant (now a civil claimant) if the civil claim would have the effect of invalidating the criminal conviction." *Lassen v. Lorain County, OH*, No. 1:13 CV 1938, 2014 WL 3511010, at \*6 (N.D. Ohio July 14, 2014) (Nugent, J.) (dismissing assault and battery and gross neglect state-law claims) (citing *Contreras v. Simone*, 112 Ohio App.3d 246, 248 (1996)). Here, Plaintiff could have asserted battery (or excessive force) as an affirmative defense at his criminal proceeding, but did not. Therefore, Plaintiff is barred from relitigating the issue in the case at bar. Plaintiff's battery claim will be dismissed.

### III. Conclusion

Finding that Plaintiff has failed to demonstrate that he was denied a right secured by the Constitution or laws of the United States -- an essential element of § 1983 claim,

Defendant Joseph Barnhouse's Motion for Judgment on the Pleadings (ECF No. 35) is granted; and

Defendants The City of Canton, Ohio, Steven E. Shackle, and Keith Foster's Motion for Judgment on the Pleadings (ECF No. 49) is granted without opposition.

Defendants' Unopposed Motion to Stay Case Schedule (ECF No. 51) is denied as moot.

IT IS SO ORDERED.

| March 30, 2020 | */s/ Benita Y. Pearson* |
|---|---|
| Date | Benita Y. Pearson |
| | United States District Judge |